**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cherie Harbaugh, | No. CV-19-04720-PHX-JAT |
|      Plaintiff, | **ORDER** |
| v. | |
| Pacific Capital Enterprises LLC, et al., | |
|     Defendants. | |

Pending before the Court is Plaintiff Cherie Harbaugh's ("Plaintiff") Amended Application for Entry of Default Judgment, (Doc. 25), against Defendants Pacific Capital Enterprises LLC, Superior Diamond Management LLC, Michael Barry Eckerman, and Tonya Eckerman ("Defendants"). The Court now rules on the application.

The Court's prior order, (Doc. 24), recounted what few background facts have emerged at this point and the Court need not repeat them here. In that prior order, the Court found that four of the factors that the Court must consider prior to entry of default judgment, *see Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986), did not weigh strongly either for or against doing so.[1] Three other factors, however, weighed heavily against entry of default judgment.

The primary reason that these three factors weighed against entry of default judgment had to do with the fact that Plaintiff's complaint fell well below the standards

---

[1] Those factors were (1) the policy in favor of merits decisions, (2) the possibility that Plaintiff would be prejudiced, (3) the possibility of a dispute over material facts, and (4) whether the default was due to excusable neglect. (Doc. 24 at 6).

set forth in *Landers v. Quality Communications, Inc.*, 771 F.3d 638, 644–45 (9th Cir. 2014) (holding that a plaintiff must identify a given workweek "that she worked more than forty hours in . . . without being compensated for the hours worked in excess of forty during that week"). (Doc. 24 at 2–5). Because a defendant admits only well-pled allegations upon default, *see DirecTV v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007), and Plaintiff had made merely inadequate general allegations, the Court concluded that the sufficiency of the complaint and the merits of Plaintiff's substantive claim weighed against entry of default. (*Id.* at 5). Put simply, the complaint was so vague that the Court could not assure itself that there was any merit to Plaintiff's claim.

Plaintiff's lack of support for her claims became particularly problematic when it came to the Court's analysis on another of the *Eitel* factors—the sum of money at stake. (*Id.* at 5). Plaintiff sought treble damages amounting to $55,161.33 for wrongly withheld regular pay under Arizona law, A.R.S. § 23-355(A), and $2,720.48 in actual and liquidated damages for wrongly withheld overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207, 216(b). (Doc. 19-1 at 3). Even after Defendants' default, Plaintiff was still required to provide proof of these damages. *PepsiCo, Inc. v. Cal Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). But the only evidence Plaintiff submitted was her lawyer's affidavit stating, without support, that her FLSA claim "includes" 29 hours of unpaid overtime. (*Id.* at 2). Thus, much like the complaint, the affidavit amounted to no more than a free-floating request for a damages award untethered to any supporting facts. The Court consequently denied Plaintiff's application for default judgment and noted that Plaintiff could attempt to cure the aforementioned defects by submitting an affidavit of her own that might supply the facts her complaint lacked. (Doc. 24 at 6). Stated differently, the Court essentially invited Plaintiff to submit evidence that could overcome the vagueness of her complaint and demonstrate to the Court that her requested damages were reasonable in relation to Defendants' conduct.

Three days later, Plaintiff submitted the pending amended application. (Doc. 25). By this second application, Plaintiff now remembers quite a lot about her employment

that was not previously in her complaint or her first application for default judgment. For one thing, Plaintiff discovered that her employer had failed to pay her for an additional 151 hours of overtime than she had previously indicated. (*Compare* Doc. 19-1 at 2 (claim for 29 hours of overtime), *with* Doc. 25-1 at 2 (claim for 180 hours of overtime)). She also seems to have realized that she neglected to tell the Court about all of her unpaid regular wages because she now claims an additional $6,376.77 in treble damages. (*Compare* Doc. 19-1 at 3 (seeking $55,161.33), *with* Doc. 25-1 at 3 (seeking $61,538.10)). All told, Plaintiff's amended application seeks a damages award $20,540.29 (or 35.5%) greater than her first application.

Plaintiff does not muster much more than a meager attempt to explain this dramatic increase in damages. Making no substantive legal argument about why she was entitled to default judgment,[2] or even acknowledging that her claim is now more than $20,000 larger, Plaintiff submits her own affidavit that offers some information about her employer's purportedly unlawful wage practices. Far from ameliorating the problems identified in the Court's prior order, however, the affidavit introduces only more confusion.

The fundamental problem with the affidavit is that it is internally inconsistent. In it, Plaintiff claims that she worked 180 hours of unpaid overtime and cites exhibit B to support this figure. (Doc. 25-2 at 1). Exhibit B appears to contain two spreadsheets, one listing the total number of overtime hours worked on a weekly basis ("the weekly spreadsheet") and then a summary of those hours in a spreadsheet at the end of the exhibit ("the summary spreadsheet"). When the relevant numbers of each spreadsheet are added together, the sum of each is different and neither is 180. Adding the numbers at the

---

[2] In neither the pending application nor the prior one did Plaintiff even attempt to analyze the *Eitel* factors. With regard to the pending motion, it is particularly surprising that Plaintiff did not address at least the substantive merits of her claims given the Court's prior order. The Court's best guess is that this is because she believes her claim is for a "sum certain" such that the Clerk of the Court will rule on it. (*See, e.g.*, Doc. 25-1 at 2). The Court hopes it is clear by now that her claim is not for a sum certain and that it is up to the Court to evaluate whether to enter default judgment in accordance with the *Eitel* factors.

bottom of each week in the weekly spreadsheet yields a figure of 129 hours of unpaid overtime.[3] If the Court adds the hours in excess of forty for the weeks listed in the summary spreadsheet, Plaintiff lists only 106 hours of unpaid overtime.[4] Closer examination reveals some, but not all, of the reason for the discrepancy is that the summary spreadsheet does not include one nine-hour workday listed in the weekly spreadsheet for the week of August 18, 2018.[5] In addition, Plaintiff listed nine hours of overtime on Saturday July 12, 2018, but only listed six hours of overtime for that week on the weekly spreadsheet and five hours on the summary spreadsheet. The Court does not readily perceive any other discrepancies that would either account for these different amounts or support Plaintiff's claim that she worked 180 hours. At bottom, the contradictions in Plaintiff's affidavit prevents the Court from concluding she has a meritorious claim or is entitled to an award of damages, let alone the enlarged award she now seeks. If Plaintiff has no idea how many hours of unpaid overtime she worked, and when she worked them, how can the Court conclude her representations are reliable or trustworthy and rely on them to issue a damages award? Thus, the same problems identified in the Court's prior order still plague Plaintiff's pending application for default judgment.

The Court acknowledges that Plaintiff need only produce "sufficient evidence to show the amount and extent of [overtime] work as a matter of a just and reasonable inference" to prevail on her FLSA claim. *Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986) (emphasis omitted) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). And that FLSA liability may attach "even though [damages] be only approximate." *Id.* (emphasis omitted) (quoting *Anderson*, 328 U.S. at 688). It is

---

[3] $23 + 11 + 11 + 13 + 13 + 5 + 6 + 7 + 5 + 5 + 5 + 5 + 5 + 5 + 5 + 5 = 129$. (Doc. 25-2 at 11–16).

[4] $8 + 11 + 9 + 13 + 18 + 5 + 5 + 7 + 5 + 5 + 5 + 5 + 5 + 5 = 106$. (Doc. 25-2 at 17).

[5] The weekly spreadsheet double-counted June 24, 2018, (Doc. 25-2 at 11), making all days of the week one-day off beyond that point. She also labeled July 1 of that year as a Tuesday, when it was a Saturday. (*Id.* at 13). Thus, the majority of the days of the week in that spreadsheet do not correspond to the date listed and are less reliable for that error.

nonetheless true that while the existence of some damage may be reasonably certain, the amount of that damage can be uncertain. *Id.* Here, the inherent conflict in Plaintiff's multiple requests for damages awards renders the amount of damages so uncertain as to preclude entry of default judgment.

In addition, Plaintiff continues not to provide any evidence of her employer's bad faith. As the Court explained in its prior order, that evidence is necessary both to justify a treble damages award for withheld wages and to assess the amount of money at stake in relation to the seriousness of Defendants' conduct. (Doc. 24 at 5–6). Unlike other examples of bad faith that Arizona's appellate courts have discussed in this context, *see Abrams v. Horizon Corp.*, 669 P.2d 51, 56 (Ariz. 1983), the only evidence in this record suggests that Defendants were clear to Plaintiff about why she had not been paid her wages and made known their intent to resolve the issue. (Doc. 25-2 at 5).

On this record, the Court is greatly concerned by Plaintiff's increased damages request. Plaintiff's complaint did not include any hour-amount or request a specific sum for damages. Now she claims increasing amounts on successive motions for default judgment. Such behavior is at odds with at least the purpose, if not the letter,[6] of Federal Rule of Civil Procedure ("Rule") 54(c). By prohibiting default judgments from "differ[ing] in kind . . . or exceed[ing] in amount, what is demanded in the pleadings," Rule 54(c) means to provide a defendant notice of the damages being sought against her so that she can make an informed economic decision about whether to answer. *Rosas v. Hua Ping Chang*, No. 5:13-cv-01800 HRL, 2014 WL 4925122, at *2 (N.D. Cal. Sept. 29, 2014), *report and recommendation adopted*, No. 13-CV-01800-LHK, 2014 WL 7206838 (N.D. Cal. Dec. 18, 2014). As one commentator notes:

> It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the

---

[6] *See Henry v. Sneiders*, 490 F.2d 315, 317 (9th Cir. 1974) (per curiam) (holding that granting default judgment where a complaint asking for damages in an amount to be proven at trial does not violate Rule 54(c)).

court to give a different type of relief or a larger damage award. . . .
. . . .
. . . Rule 54(c) may be thought of as expressing a simple, but important, principle—at any point in a case a defendant is entitled to determine his maximum liability, as fixed by the ad damnum as it stands at that point in the case, and decide whether to proceed further.

10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2663 (4th ed. 2020 Update). Where, as here, the complaint contains no specific demand for damages, and the plaintiff has continuously ratcheted up the amount of damages she requests in her applications for entry of default judgment, that principle is afforded no respect. At the least, the escalation in requested damages demands some sort of explanation.[7]

Plaintiff's new damages request is not the only new information that gives the Court pause. Previously, Plaintiff had indicated that she worked simply as an inside salesperson for Defendants with an hourly rate of pay. (Docs. 1 at 4; 19-1 at 2). But the pending application reveals that she was the "Director of Sales and Acquisitions," (Doc. 25-2 at 9), and was a salaried employee, (*id.* at 1 ("My annual salary was $65,000.")). The FLSA exempts employees "employed in a bona fide executive . . . capacity" from the overtime-pay requirement. 29 U.S.C. § 213(a)(1). This exemption encompasses an employee (1) who is compensated on a salary basis "of not less than $684 per week," (2) "[w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof," (3) " [w]ho customarily and regularly directs the work of two or more other employees," and (4) "[w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of

---

[7] In addition to Rule 54(c) concerns, the Court is also concerned about the generally cavalier attitude that Plaintiff has displayed in both applications for default judgment. In essence, Plaintiff's first application acted as if whatever damages she desired were there simply for the asking. When the Court said "no," Plaintiff thought the correct response was "more." Plaintiff is mistaken. "[D]efault judgments are disfavored," *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1189 (9th Cir. 2009), and the Court must have some reasonable basis on which it can enter a default judgment and resulting award.

status of other employees are given particular weight." 29 C.F.R. § 541.100(a); *see also* 29 C.F.R. §§ 541.102 (providing an illustrative list of management activities), 541.602(a) (defining "salary basis"). Given Plaintiff's job title and salaried status, the Court is concerned that she may fall within the exemption to the federal overtime requirement such that any award would be improper. As indicated previously, Plaintiff has declined to make any argument addressing the merits of her claim. Plaintiff must address the Court's concerns in any subsequent application for default judgment she chooses to file.

Because Plaintiff had difficulty providing the Court with evidence that could cure the deficiencies identified in the prior order, the Court will now list items of evidence that it believes would provide it with a reasonable basis on which to award a default judgment:

1. Evidence and explanation of Defendant's bad faith in withholding her wages.
2. Evidence and explanation showing that Plaintiff is not a bona fide executive exempt from the FLSA.
3. If Plaintiff makes a showing that she is not exempt, noncontradictory evidence that can support her claim that she worked 180 hours of unpaid overtime or whatever other number she wishes to prove.
4. An explanation of the significant differences between her first and second requests for damages.

For these reasons,

IT IS ORDERED that Plaintiff Cherie Harbaugh's Application for Default Judgment (Doc. 25) is DENIED without prejudice. Within fourteen days of the date of this order, Plaintiff shall either amend her complaint (and re-serve Defendants) or file another motion for entry of default judgment, along with accompanying affidavit(s) and supporting documents, that cures the deficiencies identified herein.

Dated this 22nd day of June, 2020.

James A. Teilborg
Senior United States District Judge